UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GREAT CLIPS, INC., a Minnesota Corporation,<br><br>                            Plaintiff,<br><br>v.<br><br>KHADEJA QAYOUMI, an individual; and AHMAD QAYOUMI, an individual,<br><br>                            Defendants. | Civil Action No. _____<br><br><br><br>**COMPLAINT** |

For its Complaint, Plaintiff Great Clips, Inc. states and alleges as follows:

## PARTIES

1.      Plaintiff Great Clips, Inc. ("Great Clips") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

2.      Defendant Khadeja Qayoumi is an individual who resides in, and is a citizen of, California.

3.      Defendant Ahmad Qayoumi is an individual who resides in, and is a citizen of, California.

4.      Defendants Khadeja Qayoumi and Ahmad Qayoumi will be jointly referred to herein as the "Defendants" or the "Qayoumis".

## JURISDICTION

5.      The Court's subject matter jurisdiction resides in 28 U.S.C. §1332. There is complete diversity of citizenship between the parties. The value of the amount in controversy, including the value of the object of the litigation and/or the rights to be protected as to the claims

for declaratory judgment/specific performance, exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

6. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §1391 (a) of the Judicial Code. In addition, Defendants have consented to venue and jurisdiction in Minnesota.

## BACKGROUND

7. Great Clips is a national franchisor that has nearly 3,000 franchise salons throughout the United States. Great Clips enters into franchise agreements with its franchisees that set forth the terms and conditions of their relationships.

8. Defendants entered into a Great Clips' franchise agreement in February 2009 (the "Franchise Agreement"). Pursuant to the Franchise Agreement, Defendants own and operate a Great Clips' salon located at 10444 Twin Cities Rd., #30, Galt, CA 95632, in the Galt Village Center (the "Salon").

9. Pursuant to the Franchise Agreement, Defendants were required to pay to Great Clips on a biweekly basis a Continuing Franchise Fee in an amount equal to 6% of the Gross Sales by the Salon. Defendants were also required to pay to Great Clips on a biweekly basis a Continuing Advertising Contribution equal to 5% of the Gross Sales by the Salon.

10. "Gross Sales" is defined in the Franchise Agreement to mean "the total dollar volume income from all cash, credit or charge sales of all merchandise, products and services sold or rendered in connection with Franchisee's GREAT CLIPS® business".

11. The Franchise Agreement provides that all late payments are subject to interest at the rate of 18% per annum or the maximum legal rate of interest allowed by the state.

12. Pursuant to the Franchise Agreement, Defendants were required to maintain and provide to Great Clips certain reports setting forth sales information and data, including a

computation of the Continuing Franchise Fee and the Continuing Advertising Contribution, certified by the Defendants. Great Clips also had the right under the terms of the Franchise Agreement to conduct an audit or review of Defendants' books and records. If such a review showed a misstatement of 5% or more as to data reported by Defendants or an underpayment of 2% or more of fees due to Great Clips, the Defendants were required to reimburse Great Clips for the cost of the audit/review.

13. The Franchise Agreement also provided that Great Clips could terminate the agreement upon 30 days written notice for good cause, which included, but was not limited to, a material breach of the Franchise Agreement; the failure to make any payment when due as required by the terms of the Franchise Agreement; and, the understatement of Gross Sales.

14. On or about June 21, 2010, Great Clips exercised its option to conduct an audit of the Salon owned by the Defendants for the period of March 2009 through May 2010. The audit showed a misstatement of 5% or greater as to data reported by the Defendants and an underpayment of 2% or more of fees due to Great Clips. The audit also showed incidents/suspicious activities supporting an underreporting of revenue/Gross Sales by the Defendants, including numerous invoices that were changed to lower priced services after the invoice was closed; several longest haircut times each month which were double the stylists' average haircut times; numerous service and product discounts provided after the invoice was closed; and bank deposits less than the reported sales due to not all cash being deposited in the bank.

15. In light of the audit results, Great Clips sent a letter to Defendants on August 25, 2010, informing Defendants of the reporting and payment deficiencies, demanding payment of the outstanding balance and informing Defendants that if payment was not made within thirty

(30) days, Great Clips would begin the process of default and termination of the Franchise Agreement.

16. Defendants failed to pay any amount of the outstanding balance set forth in the August 25, 2010, letter.

17. In September 2011, an employee who worked at the Salon contacted Great Clips and provided information to Great Clips regarding activities occurring at the Salon which he believed were improper. The employee asserted that he saw numerous times when payments made by customers paying cash who were serviced by Defendant Khadeja Qayoumi did not go into the cash register and no receipt was provided. He said "paper tickets" were kept of people requesting haircuts and they were not entered into the computer so there was no computerize record of the number of people who received haircuts. He claimed this would happen 4-5 times during a five (5) hour shift and 8-9 times in an eight (8) hour shift.

18. On or about October 14, 2011, Great Clips conducted a second audit of the Salon for the period from June 2010 through September 2011. While conducting the audit, a Great Clips' representative observed Defendant Khadeja Qayoumi checking out a customer who paid in cash and not giving her a receipt. The sale was not entered into the P.O.S. system when the customer paid.

19. The results of the October 2011 audit showed misstatement of data provided by Defendants of 5% or greater and an understatement of fees owed to Great Clips in an amount of 2% or greater. The audit showed more unreported cash sales than there were in the first audit. The audit also showed incidents/suspicious activities supporting an underreporting of revenue/Gross Sales by the Defendants, including numerous invoices that were changed to lower priced services after the invoice was closed; several longest haircut times each month which

were double the stylists average haircut times (this is due to the cash paying customer getting a haircut in between and not being entered into the P.O.S. system); numerous service and product discounts provided after the invoice was closed; and bank deposits less than the reported sales due to not all cash being deposited in the bank.

20. On or about November 3, 2011, Great Clips sent a letter to Defendants providing a notice of default and termination of the Franchise Agreement. The letter provided that if payment of all outstanding amounts identified by both audits was not made within thirty (30) days the Franchise Agreement would be terminated. The letter also provided that if the Franchise Agreement was terminated, Great Clips would exercise its rights under the Franchise Agreement to take over the operation of the Salon on December 13, 2011.

21. In Section 16, the Franchise Agreement provides that upon termination of the Franchise Agreement Great Clips, can at its option, take assignment of the Defendant's interest in the lease for the location of the Salon and take over operation of the Salon, including the purchase of any or all equipment, fixtures, furnishings or supplies owned by the Defendants and used at the Salon.

22. On or about November 10, 2011, counsel for the Defendants informed Great Clips that Defendants disputed Great Clips right to terminate the Franchise Agreement, and that they would not turn over the Salon to Great Clips on December 13, 2011. In the letter, counsel for Defendants also indicates that the Defendants may de-identify the salon and operate it independently thereby depriving Great Clips of its right to continue to operate a Great Clips' salon at that location.

23. The Franchise Agreement provides that the prevailing party in any legal proceeding to obtain relief under the Franchise Agreement, and Great Clips in connection with

any action to collect unpaid fees, shall be entitled to recover its costs and expenses incurred in connection with such action, including reasonable attorneys' fees.

## CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT/FAILURE TO PAY FEES

24. Great Clips realleges and incorporates Paragraphs 1-23 of the Complaint.

25. Defendants have breached the Franchise Agreement by underreporting Gross Sales to Great Clips and failing to pay the required Continuing Franchise Fees and Continuing Advertising Contributions.

26. As a result of Defendants' actions Great Clips had been damaged in an amount believed to be at least equal to $12,116.41, plus interest, the exact amount to be determined at trial.

### COUNT II:  DECLARATORY JUDGMENT

27. Great Clips realleges and incorporates the Paragraphs 1-26 of the Complaint.

28. An actual, present, genuine and justiciable controversy has arisen between Great Clips and the Defendants relating to the termination of the Franchise Agreement.

29. Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, this Court has the jurisdiction and power to determine, among other things, the actual, present, genuine and justiciable controversies set forth in this Complaint.

30. Great Clips properly terminated the Franchise Agreement and has properly exercised its right to take over the Salon.  Defendants dispute that Great Clips has properly terminated the Franchise Agreement and have refused to turn over the Salon.

31.     The refusal to turn over the Salon upon the proper termination of the Franchise Agreement has and/or will damage Great Clips in an undeterminable amount, the value of which is in excess of $75,000.

32.     Great Clips is entitled to a declaration that it has properly terminated the Franchise Agreement and is entitled to enforce the post-termination obligations set forth in Sections 15 and 16 of the Franchise Agreement, including §15(a)- (e); portions of §15(g); §16.1; and §16.2.

## COUNT III: SPECIFIC PERFORMANCE

33.     Great Clips realleges and incorporates the paragraphs 1-32 of the Complaint.

34.     Great Clips has properly exercised its right to terminate the Franchise Agreement and to seek enforcement of certain post-termination obligations set forth in the Franchise Agreement, including, but not limited to, taking over possession of the Salon at its current location.

35.     The failure of Defendants to comply with the post-termination obligations in the Franchise Agreement has and/or will damage Great Clips in an undeterminable amount, the value of which is in excess of $75,000.

36.     Great Clips seeks specific performance of the Franchise Agreement requiring Defendants to fully comply with the requirements set forth in Sections 15 and 16 of the Franchise Agreement, including §15(a)- (e); portions of §15(g); §16.1; and §16.2.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Great Clips, Inc. requests the following relief:

1.      An award of all damages suffered by Great Clips as a result of Defendants' breach of contract, plus interest; and

2. A declaration that Great Clips has properly terminated the Franchise Agreement based on the terms of the Franchise Agreement and applicable law and is entitled to enforce the post-termination obligations set forth in Sections 15 and 16 of the Franchise Agreement, including §15(a)- (e); portions of §15(g); §16.1; and §16.2;

3. Specific performance and enforcement of Paragraphs 15 and 16 of the Franchise Agreement, including, §15(a)-(e); portions of §15(g); §16.1 (turning over the operations of the Salon, and assigning the Lease for the Salon, to Great Clips); and §16.2;

4. An award of all costs and expenses, including reasonable attorneys' fees incurred by Great Clips in connection with this matter; and

5. Such other and further relief as the Court deems just and equitable.

Dated: November 16, 2011                     **BRIGGS AND MORGAN, P.A.**

By: s/Jay W. Schlosser
 Jay W. Schlosser (# 204353)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8400

**ATTORNEYS FOR PLAINTIFF
GREAT CLIPS, INC.**